UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALPHONSO WHIPPER, | ) | 3:23-CV-27 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREEN, *et al.*, | ) | |
| *Defendants*. | ) | August 23, 2023 |

## INITIAL REVIEW ORDER

In this prisoner civil rights action, Plaintiff Alphonso Whipper, proceeding *pro se*, alleges that seven current and former prison officials and two private parties violated his First Amendment rights by dismissing Plaintiff from a prison education program as retaliation for his constitutionally protected speech. Compl., ECF No. 1. Plaintiff seeks compensatory and punitive damages and against all nine Defendants under 42 U.S.C. §§ 1983, 1985, and 1986.[1]

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

---

[1] Although Plaintiff's complaint does not reference a request for injunctive relief, he has separately filed a motion for a preliminary injunction, *see* ECF No. 6, which this Court will address in a separate order. Given the filing of a request for injunctive relief, the Court will liberally construe the complaint as also requesting injunctive relief.

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

I.     **FACTUAL BACKGROUND**

While the Court does not set forth all the facts alleged in Plaintiff's complaint, it summarizes his basic factual allegations to give context to its ruling below. All the allegations set forth in the complaint occurred while Plaintiff was housed at Cheshire Correctional Institution ("Cheshire C.I."). Plaintiff has since been transferred to MacDougall-Walker Correctional Institution ("MacDougall C.I."). *See* ECF No. 20.

Plaintiff had participated in Wesleyan University's Center for Prison Education ("CPE") for many years. Compl., ECF No. 1 ¶¶ 15, 20. During that time, he had acted as an "out-spoken advocate" for CPE; advised CPE staff and professors about prison culture; participated in orientation panels; and appeared on a panel to advise the Connecticut General Assembly about the benefits of providing prisoners with higher education academic opportunities. *Id.* ¶¶ 20–21.

In late spring of 2022, Plaintiff required only one half-credit to receive his Bachelor's Degree through CPE. *Id.* ¶ 22. To earn this half-credit, Plaintiff requested—and a CPE administrator granted—Plaintiff permission to work on a senior study project with a professor of

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement," does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (internal quotation marks omitted) (alterations in original).

his choice to write a 20-page term paper.  *Id.* ¶¶ 20, 23.   Plaintiff's senior project did not require class attendance.  *Id.* ¶ 23.

On September 8, 2022, CPE students had a pre-semester meeting in the Cheshire C.I. auditorium.  *Id.* ¶ 24.  Prior to the commencement of the meeting, Counselor Green informed the students that there was a "contract" concerning class conduct for students to read and sign.  *Id.* ¶ 28.  Plaintiff inquired as to how DOC could make rules for CPE, when CPE was a program created and run by Wesleyan University, a private university.  *Id.* ¶ 29.  Plaintiff believed DOC had no authority to dictate the rules governing a third-party program like CPE.  *Id.* ¶ 29.  Plaintiff explained that a contract was unnecessary because prisoner conduct was already regulated under Connecticut Department of Correction administrative directives, which do not require prisoners to sign contracts agreeing to follow DOC rules.  *Id.* ¶ 32.  As Plaintiff understood it, DOC already had authority to enforce its own rules.  *Id.*

Defendant Green, a counselor, conferred with two other defendants, Counselor Supervisor Santiago and Reentry Director Chonobry, and then returned with Defendant Counselor Supervisor Roach to the auditorium.  *Id.* ¶ 33.  Defendant Roach asked Plaintiff to identify the problem he had with the contract.  *Id.* ¶ 36.  Plaintiff explained that he objected to the form of the contract because it did not specify the entity with which the inmates were contracting; it was not on official State of Connecticut stationery; and it contained no official insignia or endorsement by a state administrative authority, state statutory authority, or DOC administrative directive.  *Id.* ¶ 37.  Defendant Roach responded that the form was actually a waiver and not a contract, and that Plaintiff could not participate in CPE if he did not sign.  *Id.* ¶¶ 38–49.

Plaintiff later expressed his objections to Defendant Chonobry.  *Id.* ¶ 53.  While Plaintiff

3

agreed that no inmate has a right to participation in any particular DOC program, Plaintiff questioned whether non-prison programs like CPE were subject to the same limitations.  *Id.* ¶¶ 57–58.  Plaintiff stressed the differences between CPE and DOC-run programming.  *Id.* ¶ 58.  Plaintiff's worry stemmed from the fact that CPE participation can influence the Commutation Board's decisions to release a prisoner who has met certain qualifications.  *Id.*  Because Plaintiff himself was working on his commutation application, he explained that signing a "waiver" rendered him vulnerable to restrictions that "were unfair" because he was not taking a class in connection with his participation in CPE.  *Id.* ¶ 60.  Defendant Chonobry responded that it would be a shame if Plaintiff were not allowed to graduate after all of his work, and Plaintiff took his seat.  *Id.* ¶¶ 61–62.

During this interaction, several guards gathered outside of the auditorium.  *Id.* ¶ 63.  Defendant Green again tried to pass out the document, but several students expressed their disinterest in signing.  *Id.* ¶ 64.  Green then explained that the students did not have to sign the form.  *Id.* ¶ 65.  As Plaintiff stated:  "Everyone has heard him say that you do not have to sign.  It's over.  Let it go."  *Id.* ¶ 66.  Chonobry explained that the prison staff wanted a record of who signed or did not sign the waiver.  *Id.* ¶ 67.  As the students exited the auditorium, staff presented the forms to the students.  *Id.* ¶ 70.  Plaintiff believes that only three students signed forms at that time.  *Id.*

CPE classes scheduled for the next week were not held, and CPE staff did not return mail or answer the CPE phone line during that same two-week period.  *Id.* ¶¶ 71–72.  When pressed, DOC staff did not explain the lack of contact.  *Id.* ¶ 73.  In fact, DOC staff denied that they were obstructing contact with CPE staff, and indicated that any silence from CPE was the students' fault

for not signing the form.  *Id.* ¶¶ 73–74.

Later, Plaintiff complained to Deputy Warden Pierce that no responsible adult should be forced into signing a "misrepresentative" document.  *Id.* ¶ 76.  Deputy Warden Pierce advised Plaintiff to raise his complaint through the grievance procedures.  *Id.* ¶ 77.

On September 20, 2022, prison officials informed CPE students that they would be called to sign "School Unit Rules."  *Id.* ¶ 78.  Plaintiff asked Defendant Roach what was being waived by signing the "School Unit Rules" document.  *Id.* ¶ 80.  After Plaintiff explained that the language in the "School Unit Rules" mattered to CPE students because of their fear of signing a "fraudulent" waiver, Defendant Roach informed Plaintiff that Plaintiff would be called separately to sign the "School Unit Rules."  *Id.* ¶¶ 82, 85.

The next day, Plaintiff met with Deputy Warden Nunez.  While Plaintiff met with Defendant Nunez, two prison captains went around the facility and threatened to "kick[] out" certain students unless they signed the waiver.  *Id.* ¶ 88.  During the meeting, Defendant Nunez told Plaintiff he had made changes to the form in response to student complaints.  *Id.* ¶ 89.  Defendant Nunez also informed Plaintiff that the "School Unit Rules" were being enforced by the new Principal, Defendant Cambra.  *Id.* ¶ 90.  Plaintiff responded that the rules must conform with the DOC administrative directives, which should be enforceable without any waiver.  *Id.* ¶ 91.  Plaintiff asked, in particular, whether he was being asked to waive his rights to be formally charged with a rule violation—the formal process that would permit him to present a defense to an objective adjudicator.  *Id.* ¶ 92.  Deputy Warden Nunez reiterated that the form was only an agreement to follow rules.  *Id.* ¶ 93.  Plaintiff continued to voice his objections to the rules form.  *Id.* ¶¶ 96–100.  Plaintiff was concerned that prison officials were forcing Plaintiff to choose between

pursuing a degree—and a possible commutation of sentence—with his constitutional right to protected speech. *Id.* Defendant Nunez cautioned Plaintiff "to weigh *graduating now* over waiting years for a court decision." *Id.* ¶ 99 (emphasis in original). Plaintiff informed Nunez: "Some hills you gotta die on." *Id.* ¶ 101.

On September 22, 2022, Defendant Roach informed Plaintiff that Plaintiff had been removed from the CPE program. *Id.* ¶ 103. Plaintiff later learned that Defendant CPE Administrator McGloin agreed to remove any student who refused to sign the "School Unit Rules" form. *Id.* ¶ 104. Plaintiff alleges that he has exhausted all his administrative remedies pertaining to these incidents. *Id.* ¶ 3.

### III. DISCUSSION

In this action, Plaintiff has sued Counselor Green, Counselor Supervisor Roach, Counselor Supervisor Santiago, Reentry Director Chonobry, former Deputy Warden of Programs and Treatment Pierce, Deputy Warden Nunez, and Warden Reis. Plaintiff sues these state Defendants in their individual and official capacities. He has also sued Defendant Cambra, who is alleged to be a Principal of United School District 1 that operates within DOC, and Defendant McGloin, an Administrator for Wesleyan's Center for Prison Education ("CPE").

Plaintiff alleges that Defendants were aware of his protest against the rules form and conspired to retaliate against him by removing him from the CPE program, in violation of the First and Fourteenth Amendments. *Id.* ¶¶ 1, 106–14. Plaintiff cites, in particular, 42 U.S.C. §§ 1983, 1985, and 1986. For the reasons set forth below, the Court will allow Plaintiff's § 1983 claims to proceed with respect to Defendants Counselor Green, Counselor Supervisor Roach, Counselor Supervisor Santiago, Reentry Director Chonobry, Deputy Warden Nunez, Principal Cambra, and

6

CPE Administrator McGloin, but dismisses Plaintiff's § 1983 claims against Defendant Reis and Pierce and Plaintiff's §§ 1985 and 1986 claims with respect to all Defendants.

    A.  Section 1983

Section 1983 creates a private cause of action against any person who, acting under color of state law, deprives an individual of his federally protected rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). A section 1983 claim contains two elements: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Greenwich Citizens Comm., Inc. v. Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 29–30 (2d Cir. 1996) (cleaned up). A plaintiff seeking damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violations. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Thus, a plaintiff must plead that each defendant, "through the official's own individual actions," has violated his rights. *Tangretti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

    *1.  First Amendment Retaliation*

To plead a First Amendment retaliation claim, a plaintiff must plausibly allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). The Second Circuit has "instructed district courts to 'approach prisoner

retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

For purposes of initial review, Plaintiff plausibly pleads the first element of his claim: protected speech. Plaintiff claims that his verbal expression protesting the rules form and its execution is protected under the First Amendment. Notably, "the Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate." *Cosby v. McDonald*, 3:20-CV-432 (MPS), 2020 WL 5026550, at *6 (D. Conn. Aug. 25, 2020) (quoting *Booker v. Griffin*, No. 16-CV-72 (NSR), 2018 WL 1614346, at *17 (S.D.N.Y. Mar. 31, 2018)). Courts in this District often distinguish "verbal complaints about the conduct of correctional staff members" from "arguments or confrontations between a prisoner and correctional staff," the latter of which does not "rise to the level of protected speech." *Mejia v. Kurtzenacker*, No. 3:21-CV-1222 (MPS), 2022 WL 19331, at *4 (D. Conn. Jan. 3, 2022).

Because Plaintiff's allegations lie closer to "verbal complaints" than "arguments or confrontations," at this early stage in the proceedings, the Court finds that Plaintiff's verbal objection to the CPE rules form constitutes speech protected by the First Amendment. *See Burton v. Salerno*, No. 3:20-cv-1926 (VAB), 2023 WL 184238, at *9 (D. Conn. Jan. 13, 2023) (holding that an inmate's oral complaints qualified as protected speech because they were "more similar to petitions for redress of grievances than to verbal confrontations with corrections officers, which courts have concluded are not constitutionally protected conduct").

For purposes of initial review, Plaintiff also plausibly alleges the second element of a First Amendment retaliation claim: adverse action. "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis*, 320 F.3d at 353). Removal from participation in the CPE's Bachelor's Degree program—which Plaintiff alleges could plausibly assist an inmate in obtaining a commutation of his or her sentence—is sufficiently adverse to deter an inmate of ordinary firmness from exercising his First Amendment rights. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (finding adverse action when prison officials took away an inmate's credits toward an earlier release after he filed a grievance against a corrections officer).

Finally, for purposes of initial review, Plaintiff also plausibly alleges the final element: causation. "[A] plaintiff can establish a causal connection [ ] by 'showing that protected activity was close in time to the adverse action.'" *Brandon*, 938 F.3d at 40 (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). The alleged adverse action—being removed from CPE—occurred shortly after Plaintiff expressed his objections to the rules form. *See Tucker v. Genego*, No. 3:19-CV-2014(AWT), 2023 WL 122131, at *2 (D. Conn. Jan. 6, 2023) (noting temporal proximity between the protected activity and the alleged retaliatory act can support causation). Especially considering the repeated warnings to Plaintiff by multiple Defendants that he would not be allowed to participate in CPE if he continued to protest against signing the form, Plaintiff has adequately alleged causation.

Accordingly, the Court will permit Plaintiff to proceed on his First Amendment retaliation claims against Counselor Green, Counselor Supervisor Roach, Counselor Supervisor Santiago,

9

Reentry Director Chonobry, Deputy Warden Nunez, and Principal Cambra, whom Plaintiff alleges are all state actors.

Plaintiff's Section 1983 claim against Defendants Reis and Pierce, however, cannot proceed. Plaintiff has not alleged any facts about Warden Reis. As to Deputy Warden Pierce, Plaintiff has alleged only that he told Pierce that he did not want to sign the form, and that Pierce directed Plaintiff to file a grievance setting forth his complaint. These allegations are insufficient to allege the personal involvement of Defendants Reis and Pierce in any alleged First Amendment violation. Plaintiff cannot hold supervisory defendants, like Reis and Pierce, liable on the basis of their high positions of authority alone, but must allege facts showing their personal involvement in the alleged retaliatory action. *See Tangreti*, 983 F.3d at 618. As Plaintiff has failed to do so, he has not alleged plausible First Amendment retaliation claims against Reis and Pierce in their individual capacities.

### 2. *Private Party Liability Under Section 1983*

Plaintiff alleges that Defendant McGloin, who works as an administrator for the Wesleyan University Bachelor's Degree program provided under CPE, is also liable under § 1983. Defendant McGloin is not a state actor, which is ordinarily a requirement for § 1983 liability. To show that the actions of a private party may be attributable to the state, and thereby subject to liability under section 1983, the plaintiff must show that: (1) the defendant acted pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) the state provided significant encouragement to the defendant, such that the defendant is a willful participant in joint activity with the state, or the defendant's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) the defendant has been delegated a

10

public function by the state ("the public function test").  *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (cleaned up); *Jones v. Nickens*, 961 F. Supp. 2d 475, 484 (E.D.N.Y. 2013) (applying test to individual defendants).  "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state."  *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff has not alleged any facts to suggest that McGloin, as an employee of Wesleyan's CPE program, plausibly engaged in conduct that could be considered fairly attributable to the state: the complaint does not suggest McGloin is not controlled by the state; that the state provided significant encouragement to him; or that the state delegated a public function to him.  Thus, Plaintiff has not alleged a plausible section 1983 claim against Defendant McGloin as a state actor.  *See* 28 U.S.C. § 1915A(b).

However, a private actor who "engage[s] in a conspiracy with state officials to deprive another of federal rights" acts under color of state law for the purposes of section 1983.  *Tower v. Glover*, 467 U.S. 914, 920 (1984).  Accordingly, the Court will consider whether Plaintiff has plausibly alleged that Defendants engaged in a conspiracy to retaliate against him for exercise of his First Amendment Rights.

To state a claim for conspiracy under Section 1983, a plaintiff must allege:  "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002).  A plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an

11

agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (quoting *Romber v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Allegations can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999); *Ciambriello*, 292 F.3d at 325 ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.).

### a. Conspiracy to Retaliate

For initial review purposes, Plaintiff has sufficiently alleged facts to suggest that there was a conspiracy: specifically, that the state actors acted together in either an express or tacit agreement to remove Plaintiff from the CPE program as retaliation for his expressed objections to the rules form.[3] In short, Plaintiff's allegations describe a conspiracy in which prison officials and CPE coordinators collaborated in cajoling Plaintiff to sign a waiver or face adverse consequences. Plaintiff interacted with many different prison officials who were all aware of Plaintiff's objections—most of whom also warned Plaintiff of adverse consequences for continuing his protest. Drawing all factual inferences in the light most favorable to Plaintiff, he

---

[3] Construed most favorably to Plaintiff, the complaint appears to allege that the DOC staff Defendants and Principal Cambra are employed by different entities, and therefore, the intracorporate conspiracy doctrine does not appear to apply. Under the intracorporate conspiracy doctrine, officers, employees, and agents of a single corporate entity are legally incapable of conspiring together. *See Federal Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018) (affirming application of intracorporate conspiracy doctrine to conspiracy claim brought pursuant to 42 U.S.C. § 1985). The Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to section 1983 cases, but district courts within this Circuit have applied the doctrine in such cases and, in particular, to section 1983 cases filed by prisoners. *See, e.g., Schlosser v. Walker*, 20-CV-433 (WIG), 2020 WL 7324679, at *3–4 (D. Conn. Dec. 11, 2020); *Jones v. Wagner*, 20-CV-475 (VAB), 2020 WL 4272002, at *5 (D. Conn. July 24, 2020); *Edwards v. Annucci*, No. 17-CV-5018 (VB), 2019 WL 1284295, at *9–10 (S.D.N.Y. Mar. 20, 2019).

has plausibly alleged agreement between the parties to retaliate against him for protesting the requirement that he sign the form.

### b. *Private Actor Liability*

The court next considers whether Plaintiff has sufficiently alleged that McGloin acted "under color of state law" as "'a willful participant in joint activity with the State or its agents'" vis-à-vis the alleged conspiracy. *Ciambriello*, 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Plaintiff alleges that McGloin was aware of the other Defendants' intention to force CPE students to sign the form, and that McGloin agreed to remove any student who refused to do so. Compl. ¶ 104. At this juncture in the litigation, Plaintiff has sufficiently alleged that McGloin acted under the color of state law as a willful participant. McGloin was one of two CPE administrates with the power to remove students from CPE. *Id.* Plaintiff has alleged that the other of the two administrators was sympathetic with the students, and had later resigned from CPE because of those concerns. *Id.* Thus, the only way in which the other Defendants could have effectively conspired against Plaintiff was if McGloin was part of the conspiracy to remove Plaintiff.

Because Plaintiff has plausibly alleged, for initial review purposes, that McGloin conspired with the state actors to deprive Plaintiff of his constitutional rights, Plaintiff's Section 1983 claim against McGloin may proceed.

### B. Sections 1985 and 1986

Title 42 U.S.C. Section 1985 provides three causes of action based on conspiracy to violate a plaintiff's civil rights. Relevant to Plaintiff's allegations, section 1985(3) covers conspiracies to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and

immunities under the laws. The case law makes clear that the conspiracy must be motivated by a "racial, or perhaps otherwise class-based, invidiously discriminatory animus . . . ." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). Because Plaintiff has not alleged any nonconclusory facts to reflect that Defendants were acting in furtherance of a conspiracy motivated by racial or other class-based unlawful discrimination, his Section 1985 claim cannot proceed.

Plaintiff's claims under Section 1986 also necessarily fail because a violation of Section 1986 may proceed only if a plaintiff is able to establish a predicate claim under section 1985. *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000).

Plaintiff's claims under Sections 1985 and 1986 are therefore dismissed.

   C. Official Capacity Claims

Plaintiff also asserts his claims against Defendants in their official capacities. To the extent he asserts official capacity claims for monetary damages against the state employee Defendants, such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

The Eleventh Amendment generally prohibits a plaintiff from bringing a federal claim against a state employee in their official capacity for money damages. *In re Deposit Agency*, 482 F.3d 612, 617 (2d Cir. 2007). However, "under the venerable doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *Id.* "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an

ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Thus, Plaintiff may sue Defendants in their official capacity "for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d at 617.

To the extent Plaintiff seeks injunctive relief from officials at Cheshire C.I. to "stop his suffering of the defendants' retaliation," Plaintiff's claims are moot. ECF No. 6 at 1. Plaintiff is no longer housed at Cheshire C.I., which renders moot Plaintiff's official capacity claims against Counselor Green, Counselor Supervisor Roach, Counselor Supervisor Santiago, Reentry Director Chonobry, and Deputy Warden Nunez, who are all alleged to have been employed at Cheshire C.I. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility.).

Plaintiff has sufficiently alleged, however, that he is subject to ongoing First Amendment retaliation, in that he is still not permitted to participate in the Wesleyan CPE Program. *See* Mot. for Preliminary Inj., ECF No. 6. Accordingly, Plaintiff may proceed on his official capacity request for injunctive relief against Principal Cambra, who could plausibly provide him with the requested relief.

## **ORDERS**

All claims for conspiracy under §§ 1985 and 1986 are dismissed pursuant to 28 U.S.C. § 1915A(b). The Court also dismisses Plaintiff's official capacity claims against all Defendants except Defendant Cambra and Plaintiff's § 1983 claims against Defendants Reis and Pierce.

Plaintiff may proceed on the following claims: (1) First Amendment retaliation against

15

Counselor Green, Counselor Supervisor Roach, Counselor Supervisor Santiago, Reentry Director Chonobry, and Deputy Warden Nunez in their individual capacities and against Principal Cambra in his individual and official capacities; and (2) conspiracy to retaliate against Plaintiff for exercise of his First Amendment rights against Counselor Green, Counselor Supervisor Roach, Counselor Supervisor Santiago, Reentry Director Chonobry, Deputy Warden Nunez, CPE Administrator McGloin, and Principal Cambra in their individual capacities for damages.

The Court enters the following orders.

(1) The Clerk shall terminate Defendants Reis and Pierce from this action.

(2) The Clerk shall contact the Department of Correction Office of Legal Affairs to ascertain current service address for Defendants Counselor Green, Counselor Supervisor Roach, Counselor Supervisor Santiago, Reentry Director Chonobry, Deputy Warden Nunez, Principal Cambra, and CPE Administrator McGloin, mail a waiver of service of process request packet containing the complaint and this Order to each of these Defendants at the address provided by **September 1, 2023**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If any Defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that Defendant in his or her individual capacity and that Defendant shall be required to pay the cost of such service.

(2) Separately, Defendant Cambra may not waive service in his official capacity, and must be served in that capacity pursuant to Federal Rule of Civil Procedure 4(j). The Clerk shall prepare summons forms and send an official capacity service packet to the U.S. Marshals Service for Defendant Cambra. The U.S. Marshals Service is directed to effect service on Defendant Cambra in his official capacity at the Office of the Attorney General, 165 Capitol Avenue,

16

Hartford, CT 06106, by **October 23, 2023**, and to file a return of service by **November 6, 2023**. Such service may be effected by in-person service or by certified mail, return receipt requested, as provided in Federal Rule of Civil Procedure 4.

***

The Court will issue a schedule for this case once service is effected upon Defendants.

If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

         */s/ Sarala V. Nagala*
         SARALA V. NAGALA
         UNITED STATES DISTRICT JUDGE

It is so ordered this 23rd day of August, 2023, at Hartford, Connecticut.