UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALPHONSO WHIPPER, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:23-cv-027 (SDV) |
| | : | |
| KENNETH GREEN, ELISHA | : | |
| CHORNOBRY, MERCILLA ROACH, | : | |
| MELISSA SANTIAGO, DANIEL | : | |
| CAMBRA, SCOTT LANG, and DAVID | : | |
| SNYDER, | : | |
| | | |
| *Defendants*. | | |

## RULING ON PLAINTIFF'S AMENDED MOTION FOR RECONSIDERATION

Plaintiff moves for reconsideration of Judge Nagala's ruling on the parties' cross-motions for summary judgment. *See* ECF 286 ("MSJ Ruling"). The case has since been transferred to the undersigned on the consent of all parties. ECF 294, 303, 304. For the following reasons, Plaintiff's Amended Motion for Reconsideration, ECF 307, is DENIED, and his original Motion for Reconsideration, ECF 296, is denied as moot.

### A. TIMELINESS

Although the Motion and Amended Motion were not filed within seven days of the MSJ Ruling as required by L. Civ. R. 7(c), the delay was caused, in part, by confusion over whether *pro bono* counsel would continue to represent Plaintiff in this matter. The Court then set a new deadline for an amended motion for reconsideration, which Plaintiff met. Accordingly, the Court will exercise its discretion to consider the Amended Motion. *See*, *e.g.*, *Nesbitt v. Bemer*, No. 3:18-cv-699 (VLB), 2018 WL 5619716, at *2 (D. Conn. Oct. 30, 2018) (exercising discretion to consider untimely motion for reconsideration).

### B.  LEGAL STANDARD

The Local Rules caution that motions for reconsideration "shall not be routinely filed." D. Conn. L. Civ. R. 7(c)(1).  The grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). "The standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration should not be granted when the movant seeks to relitigate an issue that has already been decided.  *Id.*

### C.  DISCUSSION

This ruling assumes familiarity with the facts and analysis in the MSJ Ruling.  Plaintiff has not identified an intervening change of law or newly available evidence since the MSJ Ruling, which leaves clear error or manifest injustice as the potential grounds for reconsideration.  Plaintiff argues that: (1) the MSJ Ruling backtracked on prior rulings; (2) the Hanley Affidavit was not undisputed; (3) the Court erred in balancing Defendants' penological justification against Plaintiff's First Amendment rights; (4) Defendant Roach lacked the authority to impose USD #1 rules on the CPE Program; (5) the grant of summary judgment to Defendants on the retaliatory removal claim precluded complete relief; and (6) the Court erred in rejecting the conspiracy claim concerning his transfer from Cheshire C.I.  However, Plaintiff fails to demonstrate that the Court's resolution of these issues was clearly erroneous or will result in manifest injustice.

### 1. Law of the case

Plaintiff first requests reconsideration of the Court's conclusion that

> Defendants are entitled to summary judgment on Plaintiff's First Amendment
> retaliation claim with respect to his removal from the CPE Program because the
> policy of requiring CPE Program participants to sign the Form reiterating existing
> applicable rules before being able to participate in the CPE Program was
> rationally related to the legitimate penological interest of safety and order.

MSJ Ruling, ECF 286 at 10. Plaintiff argues that this was an "unwarranted departure" from the Court's prior rulings in the case. ECF 307 at 3–5. Specifically, Plaintiff argues when ruling on Defendant's motion to dismiss, the Court had "held that Whipper's removal from the CPE Program violated his First Amendment right," and when ruling on Plaintiff's motion for preliminary injunction, the Court had "found that Whipper's removal from the CPE Program violated Whipper's First Amendment rights." *Id.* at 3.

However, this argument misapprehends the differences in procedural posture between a motion to dismiss, motion for preliminary injunction, and a motion for summary judgment. On a motion to dismiss, the Court does not make merits conclusions but simply assesses whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court also does not make final merits conclusions on a motion for preliminary injunction but, rather, determines whether the plaintiff has established "a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor[.]" *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015). In contrast, a motion for summary judgment requires a final resolution on the merits "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Consequently, the

3

Court's prior rulings that the retaliatory removal claim was plausible and had a good likelihood of success were not binding on the ultimate question of liability, and Plaintiff's claim of "unwarranted departure" is unavailing.

### 2. Hanley Affidavit

In ruling for Defendants on the retaliatory removal claim, the Court explained that

> while Plaintiff possesses a First Amendment right to refuse to sign the Form because it is protected expressive conduct, Defendants have sufficiently demonstrated a legitimate penological interest in safety and order that is rationally related to the requirement that students sign the Form. Thus, Defendants did not violate Plaintiff's First Amendment rights in removing him from the CPE Program because he refused to sign the Form.

MSJ Ruling at 11. This was the result of the Court's application of four-part balancing test between inmate rights and penological interests in *Turner v. Safley*, in which the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89–91 (1987). Here, the Court determined that that Defendants had a valid penological interest in requiring CPE Program participants to sign a Form acknowledging certain prison rules because there had been "numerous behavioral issues related to unauthorized movement and loud disruptions" in the prior semester, as described in the Hanley Affidavit. MSJ Ruling at 22. The Court concluded that that even though Defendants removed Plaintiff from the Program based on his exercise of his First Amendment right not to sign, that impingement was outweighed by Defendants' penological justification. MSJ Ruling at 22–23.

Plaintiff argues that summary judgment was improper because there was a genuine dispute of material fact regarding the assertions in the Hanley Affidavit. ECF 307 at 5–9. However, as the Court observed, "[a]side from noting that the Hanley affidavit is dated almost three years after the incidents in question, Plaintiff has not put forward any evidence creating a

4

genuine dispute of material fact about whether these disturbances actually occurred in the manner Hanley has posited." MSJ Ruling at 22. Similarly, Plaintiff's 56(a)(2) statement "disputes" the evidence of disturbances but offered no counterevidence except the absence of contemporary documentation. ECF 263-1. Plaintiff now attaches excerpts from the Cambra and Cislo depositions to support his position, ECF 307-4, 307-5, but these particular excerpts were not in the MSJ record.[1] *See*, *e.g.*, *Antonmarchi v. Consol. Edison Co. of N.Y.*, No. 03-cv-7735 (LTS), 2009 WL 1069161, at *2 (S.D.N.Y. Apr. 17, 2009) (declining to reconsider summary judgment ruling where "none of the exhibits submitted by Plaintiff either in his motion for reconsideration or his reply brief constitute newly discovered evidence," even where part of one of the exhibits submitted on reconsideration was in the MSJ record). As for Cislo's testimony at the preliminary injunction hearing, which was cited in Plaintiff's MSJ opposition brief but not actually submitted, *see* ECF 264 at 13 n.3 (citing ECF 149 at 161), Cislo testified that "there was one time" where a school officer said that a study hall was "too loud," and "Beyond that, I don't have -- beyond that, I don't know." ECF 149 at 161. That does not contradict the Hanley Affidavit, and so does not create a genuine dispute of material fact, even assuming it was properly in the MSJ record.

Plaintiff also contends that prior to Defendants' submission of the Hanley Affidavit in support of their MSJ in May 2025 he had "no reason to suspect Hanley of being the key person responsible for what now seems to be the crucial piece of evidence relied upon by the Court" and that nothing prior to that submission "would have alerted Plaintiff that Hanley was a critical deposition target." ECF 307 at 7–8. However, there were multiple indications in testimony at

---

[1] The Cislo deposition excerpt in the MSJ record contained different page numbers than the excerpt cited on reconsideration. *Compare* ECF 263-5 *with* ECF 307-5.

the May 2024 preliminary injunction hearing that the impetus for requiring the inmate students to sign the Form was security and safety concerns raised by a school officer. ECF 149 at 104–105, 116, 129, 154, and 161. Plaintiff had ample opportunity prior to the discovery cutoff of February 3, 2025, *see* ECF 165, to investigate the identity of this officer and take related discovery. And even assuming Plaintiff somehow lacked fair notice of Hanley's existence prior to Defendants' MSJ, he did not object to the inclusion of her affidavit in the MSJ record based on unfair surprise. Lastly, to the extent that Plaintiff's argument is that he did not anticipate that the Hanley Affidavit would be so central to the adjudication of Count One, that is not a viable ground for reconsideration.

Consequently, Plaintiff's claim of error concerning the Hanley Affidavit is unavailing.

### 3. *Turner* balancing test

Next, Plaintiff argues that the Court's *Turner* analysis was erroneous in two respects. First, he argues that the test was inapplicable because "while balancing competing risks and burdens might be appropriate for granting or denying an injunction, that balancing should not be resolved on summary judgment." *See* ECF 307 at 9–10 (citing *Trustees of Local 7 Tile Industry Welfare Fund v. Kimo Tile & Marble LLC*, 2022 WL 2540077, at *4 (E.D.N.Y. July 7, 2022) ("A favorable balance of evidence is insufficient for summary judgment; undisputed facts that permit no reasonable alternative are required.")). However, that argument misapprehends the difference between a discrete legal standard applicable to a unique issue, such as the *Turner* balancing test, and the general evidentiary burdens applicable to a motion, such as the balance of the equities on a motion for preliminary injunction or the movant's burden of showing no genuine dispute of material fact on a motion for summary judgment. The Court applied the proper burdens and standards in its MSJ Ruling, both general and specific.

Second, Plaintiff argues that the Form was pointless or unnecessary to address the safety and security concerns insofar as it asked inmates to "agree" to existing rules that they were already required to follow.  ECF 307 at 10–12, 14–17.  The thrust of this argument appears to be that the Form was not "reasonably related" to penological interests, *see Turner*, because it did not actually change the rules governing student conduct.  But the Form did constitute a material change by requiring students to acknowledge the rules in order to continue participating in the CPE Program.  And there is no clear error in the Court's conclusion that "[i]mplementing a new policy requiring CPE Program participants to read and affirm the application of rules that had recently been broken, while perhaps imperfect, is certainly a *reasonable* means by which to attempt to enforce rules that had recently and repeatedly been disregarded and, in turn, promote an interest in safety and security."  MSJ Ruling at 23 (emphasis retained).

### 4.    Whether Defendant Roach had the authority to impose the Form requirement

Plaintiff next argues Defendant Roach lacked the authority to impose USD #1 Rules[2] on the CPE Program and that these rules were "legally and procedurally unauthorized and factually inapposite for college-level programs like the Wesleyan CPE Program."  ECF 307 at 12–14.  It is difficult to decipher what aspect of the MSJ Ruling this argument is challenging.  Perhaps Plaintiff is contending that if the USD #1 Rules were inapplicable to the CPE Program, then Defendant Roach had no legitimate penological interest in requiring inmates to acknowledge them.  But that argument was not raised in Plaintiff's Second Amended Complaint, ECF 183, nor in Plaintiff's Motion for Summary Judgment, ECF 259, nor in Plaintiff's opposition brief, ECF

---

[2] According to the DOC website, "Education in the CT Department of Correction (DOC) is provided through Unified School District #1 (USD #1). USD #1 is a legally vested school district within the Department of Correction (DOC)."  *Available at* https://portal.ct.gov/doc/org/education-services (last visited 6/10/26).

263, nor in the transcript of the oral argument, ECF 307-3, nor in the MSJ Ruling itself, ECF

286.[3]  "Reconsideration is an opportunity for the court to correct its own mistakes; it is not a

second opportunity for a litigant to argue [his] position. . . . Accordingly, no new arguments and

no new facts may be presented in a motion for reconsideration."  *Goebel v. UnitedhHealth Grp.,*

*Inc.*, No. 3:22-cv-429 (OAW), 2024 WL 1344599, at *1 (D. Conn. Mar. 30, 2024) (citing *Nat'l*

*Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof'l Football Ltd. P'ship*, 409 F. App'x 401,

403 (2d Cir. 2010)).  And even if the argument were timely raised, Plaintiff cannot fairly argue,

on one hand, that the USD #1 rules did not apply and, on the other hand, that signing the Form

was unnecessary because the students were already subject to those rules.  Consequently, this

claim of error is unavailing.

### 5.  Whether dismissal of the retaliatory removal claim has precluded complete relief

Next, Plaintiff argues that the Court's finding of no liability on the claim of retaliatory

removal from the CPE Program effectively precluded him from obtaining meaningful relief on

the retaliatory transfer claim.  ECF 307 at 17–18.  He contends that "returning Whipper to

Cheshire without reinstating him in the CPE Program would be meaningless" and adds that "[a]n

injunction should be fashioned to do justice and to restore the plaintiff to the *status quo ante*—

full participation in the CPE Program."  *Id.* at 18.  However, having determined that Defendants

are not liable on the retaliatory removal claim, the Court has no legal basis to issue injunctive

relief against them concerning the CPE Program.  Meanwhile, the relief that Plaintiff seeks on

his retaliatory transfer claim is still potentially available, namely, monetary damages and an

---

[3] At most, the USD #1 Rules were referenced in passing in Defendants' Motion for Summary Judgment, ECF 260-1 at 11, 29, and also in some exhibits to the motions for summary judgment. *See*, *e.g.*, ECF 259-2 at 2; 260-6 at 96–97, 129–130, 160–161; 260-7 at 5–11; 260-12 at 52; 264-6 at 2.

injunction returning him to Cheshire C.I.  And, if that occurs, nothing in the MSJ Ruling precludes Defendants from reinstating Plaintiff in the CPE Program at Cheshire.  Therefore, the Court's liability ruling on the retaliatory transfer claim did not result in manifest injustice to Plaintiff.  On the contrary, issuing an injunction against Defendants on a claim on which they prevailed would itself be a manifest injustice.

### 6.  Dismissal of other Defendants

Next, Plaintiff argues that genuine disputes of material fact precluded the Court's finding that Defendants other than Roach could not be liable for conspiring to transfer him.  ECF 307 at 19.  He reiterates his theory that Defendants Cambra, Nunez, and Snyder conspired with Defendant Roach to transfer him in retaliation for his First Amendment exercise.  *Id.*  However, Plaintiff's disagreement is not about what the facts are but, rather, how they should be interpreted.  The Court did not find Plaintiff's evidence to be false.  Instead, the Court determined that it was insufficient to demonstrate that inmates Cooke and Smith were involved in a conspiracy with DOC Defendants, MSJ Ruling at 40–44, and then went on to conclude that the intracorporate conspiracy doctrine barred the claim of conspiracy against the remaining Defendants, who were all affiliated with DOC, *id.* at 43–44.  Plaintiff's motion for reconsideration does not discuss the Court's determination as to Cooke and Smith, nor does it reckon with the intracorporate conspiracy finding, so it provides no valid basis to reconsider these conclusions.

Lastly, Plaintiff posits that the Court can issue injunctions against the alleged co-conspirators even if it has found them not liable for conspiracy, so it should not have dismissed them from the case.  ECF 307 at 18.  Plaintiff cites *Mercer v. Schriro*, 337 F. Supp. 3d 109, 154 (D. Conn. 2018), but the Court nothing in that decision supports the proposition that the Court

can issue a judgment, equitable or otherwise, against non-liable parties.  And other case law holds otherwise.  The Supreme Court has recognized "fundamental limitations on the remedial powers of the federal courts" and explained that those powers may be "exercised only on the basis of a violation of the law and could extend no farther than required by the nature and the extent of that violation."  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 399 (1982).  Accordingly, a court cannot impose injunctive relief against a party found not to have violated a plaintiff's substantive rights other than such "minor and ancillary provisions of an injunctive order" as might be necessary to grant complete relief.  *Id.*  For these reasons, Plaintiff's claims of error regarding dismissal of the alleged co-conspirators are unavailing.

### D.  CONCLUSION

For the foregoing reasons, Plaintiff's Amended Motion for Reconsideration, ECF 307, is DENIED and his initial Motion for Reconsideration, ECF 296, is denied as moot.

This is not a recommended ruling.  The consent of the parties allows a magistrate judge to preside over all aspects of this case in accordance with the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

SO ORDERED, this 13th day of July, 2026, at Bridgeport, Connecticut.


*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge

10